690 S.E.2d 582

**The STATE, Respondent,**

**v.**

**Victor M.S. HERNANDEZ, Appellant.**

**No. 4651.**

Court of Appeals of South Carolina.

Heard Feb. 9, 2010.

Decided Feb. 25, 2010.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Chief Appellate Defender Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Alphonso Simon, Jr., all of Columbia; and Solicitor I. McDuffie Stone, III, of Bluffton, for Respondent.

PER CURIAM.

Victor M. Sandoval–Hernandez appeals his conviction and sentence for murder, arguing the trial court erred in refusing to charge the jury on the lesser included offense of voluntary manslaughter. We affirm.

## FACTS

On January 28, 2006, Rogelio Garcia hosted an engagement party in honor of a neighbor's son. Hernandez and his friends attended the party. After Hernandez tried to kiss a woman at the party, Garcia became angry and physically ejected Hernandez from his home, grabbing Hernandez by the neck and throwing him toward the porch.

Hernandez left the party and went home. He retrieved his gun, intending to use it against Garcia if Garcia "messed with him again."[1] Hernandez returned to the party, where he began to drink and enjoy himself again. Another party guest, Raul Garcia–Gallegos, characterized Hernandez as "tranquil" and "calm" after he returned to the party. Hernandez enjoyed the party without incident until one of his friends began fighting with another party guest. After assisting in breaking

---

1. Hernandez gave the police a statement in Spanish, which the interpreter translated into English. Hernandez stated:

   And later we started to drink. And a little more later, [Garcia] came out and he was insulting me with words. And later we went to the house, and my brother stayed behind sleeping, and we returned to the party. And that is when I took the pistol. In case [Garcia] continued insulting me, I was going to shoot at him. And later on [Garcia] came out and [Garcia] began to insult me, and that is when I shot at him.

   Later, Hernandez stated, "[I]f I had been about my senses, I would have—I wouldn't [have] done it."

up the fight, Hernandez encountered Garcia again. When Garcia insulted him, Hernandez drew his gun and shot Garcia.[2] Garcia re-entered his home, where he died.

Hernandez was indicted and tried for murder and possession of a firearm during the commission of a violent crime. At trial, he requested a jury instruction on voluntary manslaughter as a lesser included offense of murder. The trial court denied his request, finding the evidence insufficient to support the presence of sudden heat of passion and sufficient legal provocation. In so ruling, the trial court observed that no testimony indicated a physical confrontation occurred between Hernandez and Garcia after Hernandez returned to the party.[3] Hernandez was found guilty and sentenced to thirty-five years' imprisonment for murder, along with a consecutive five years' imprisonment for possession of a firearm during the commission of a violent crime. This appeal followed.

## STANDARD OF REVIEW

▆▆▆▆ In criminal cases, the appellate court sits to review errors of law only and is bound by the factual findings of the circuit court unless clearly erroneous. *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001). Generally, the trial judge is required to charge only the current and correct law of South Carolina. *Sheppard v. State*, 357 S.C. 646, 665, 594 S.E.2d 462, 472 (2004). To warrant reversal, a trial judge's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant. *State v. Brown*, 362 S.C. 258, 262, 607 S.E.2d 93, 95 (Ct.App.2004).

## LAW/ANALYSIS

▆▆▆ Hernandez asserts the trial court erred in refusing to charge the jury on the lesser included offense of voluntary manslaughter despite the presentation of evidence Garcia

---

**2.** Garcia's autopsy revealed he was shot four times in the torso as he faced the gun. Only one of the bullets caused a fatal injury.

**3.** In addressing this issue again during sentencing, the trial court stated "there had been a sufficient cooling-off period after [Hernandez] was put out of the trailer."

physically and verbally assaulted Hernandez before Hernandez shot him. We disagree.

The evidence presented at trial determines the law to be charged to the jury. *State v. Brown,* 362 S.C. 258, 261–62, 607 S.E.2d 93, 95 (Ct.App.2004). "A trial judge is required to charge a jury on a lesser included offense if there is evidence from which it could be inferred that a defendant committed the lesser offense rather than the greater." *State v. Drafts,* 288 S.C. 30, 32, 340 S.E.2d 784, 785 (1986). In determining whether the evidence requires a charge of voluntary manslaughter, the trial court views the facts in a light most favorable to the defendant. *State v. Byrd,* 323 S.C. 319, 321, 474 S.E.2d 430, 431 (1996). However, "[a]n instruction should not be given unless justified by the evidence." *State v. Moultrie,* 273 S.C. 532, 534, 257 S.E.2d 730, 731 (1979). "If a jury instruction is provided to the jury that does not fit the facts of the case, it may confuse the jury." *State v. Blurton,* 352 S.C. 203, 208, 573 S.E.2d 802, 804 (2002).

Voluntary manslaughter requires proof of two elements, a sudden heat of passion and sufficient legal provocation:

> Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation. Heat of passion alone will not suffice to reduce murder to voluntary manslaughter. Both heat of passion and sufficient legal provocation must be present at the time of the killing.

*State v. Cole,* 338 S.C. 97, 101, 525 S.E.2d 511, 513 (2000) (internal citations omitted).

> "The sudden heat of passion, upon sufficient legal provocation, which mitigates a felonious killing to manslaughter, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence."

*Id.* at 101–02, 525 S.E.2d at 513 (quoting *Byrd,* 323 S.C. at 322, 474 S.E.2d at 432).

▉▉▉▉▉ An overt, threatening act or a physical encounter may constitute sufficient legal provocation. *State v. Gardner,* 219 S.C. 97, 105, 64 S.E.2d 130, 134 (1951). Sufficient legal provocation must include more than "mere words" or a display of a willingness to fight without an overt, threatening act. *State v. Rogers,* 320 S.C. 520, 525, 466 S.E.2d 360, 362–63 (1996); *State v. Johnson,* 324 S.C. 38, 40–41, 476 S.E.2d 681, 682 (1996). Neither the exercise of a legal right nor a victim's attempts to resist or defend himself from crime constitute sufficient legal provocation. *State v. Ivey,* 325 S.C. 137, 142, 481 S.E.2d 125, 127 (1997); *State v. Shuler,* 344 S.C. 604, 632, 545 S.E.2d 805, 819 (2001).

▉▉▉▉▉ However, even when a person's passion is "sufficiently aroused by a legally adequate provocation, if at the time of the killing those passions had cooled or a sufficiently reasonable time had elapsed so that the passions of the ordinary reasonable person would have cooled, the killing would be murder and not manslaughter." *State v. Knoten,* 347 S.C. 296, 303, 555 S.E.2d 391, 395 (2001). Whether an accused cooled off prior to a violent act must be determined by a review of all the circumstances surrounding the event and the people involved. *State v. Norris,* 253 S.C. 31, 35, 168 S.E.2d 564, 566 (1969).

We affirm the trial court's decision not to charge the jury on voluntary manslaughter because the evidence demonstrated Hernandez cooled off between his ejection from the party and the shooting. The sole physical altercation between the accused and the victim in this case occurred when Garcia argued with and then physically removed Hernandez from Garcia's home.[4] Furthermore, evidence demonstrated Hernandez experienced a period of cool reflection after he left the party and went home. According to Hernandez's statement to police, he took the gun to Garcia's party not to avenge a wrong already done to him but in case Garcia insulted him again. Upon returning to the party, Hernandez did not seek out Garcia. Instead, he "began to drink and have a good time again." This evidence indicates Hernandez shot Garcia because Garcia verbally insulted him after he returned to the party and not

---

4. In fact, Hernandez did not report to police that a physical altercation took place between him and Garcia at all.

because Garcia threw him out of the party earlier in the evening.

Hernandez argues the existence of a single piece of evidence that might conceivably support a finding of voluntary manslaughter instead of murder created a question for the jury. Historically, a question concerning the existence of a cooling-off period fell within the province of the jury. *State v. Goodson*, 140 S.C. 357, 361, 138 S.E. 816, 817 (1927) ("Whether, under the facts disclosed by the uncontradicted testimony as to the defendant's physical, mental, and nervous condition, and the testimony tending to show the nature of the provocation, etc., a reasonable cooling time had elapsed, that is, time in which an ordinary man, in like circumstances, would have cooled, was a question of fact for the jury and not one of law to be determined by the court."). However, more recent jurisprudence permits the trial court to make that determination:

> While the law has not defined a bright-line rule for what constitutes a sufficient time for cooling off, this Court has determined that whether the defendant's actions during the intervening time between the provocation and the killing indicates the absence of sudden heat of passion is an appropriate question for the court. *See State v. Walker*, 324 S.C. 257, 261, 478 S.E.2d 280, 281–82 (1996) (finding that the defendant demonstrated cool reflection through his actions between the alleged provocation and the killing); and *State v. Byrd*, 323 S.C. 319, 322–23, 474 S.E.2d 430, 432 (1996) (holding that the defendant's actions between the alleged provocation and killing did not support a finding of sudden heat of passion).

*State v. Pittman*, 373 S.C. 527, 575, 647 S.E.2d 144, 169 (2007). According to Hernandez, his presence at the "continuous violent drunken party" prevented him from regaining control over himself following his ejection. However, evidence indicates Hernandez left the party, drove home, and retrieved his gun, thereby removing himself from any influence the ongoing party might have exerted. Moreover, when Hernandez returned to the party, he calmly resumed drinking and enjoying himself. Hernandez's intervening actions and demeanor upon returning to the party support a finding that he cooled off after being ejected. No evidence indicates a second physical

confrontation between him and Garcia after his return. Consequently, the trial court did not err in declining to charge the jury on voluntary manslaughter.

## CONCLUSION

We find the trial court did not err in refusing to issue a jury instruction on voluntary manslaughter. Accordingly, the decision of the trial court is

**AFFIRMED.**

PIEPER and GEATHERS, JJ., and CURETON, A.J., concur.